## ELLICK BAGLEY *v.* THE STATE.

1. THEFT OF BANK-NOTES — EVIDENCE. — Positive identification of stolen paper money may in a great measure be dispensed with when there are circumstances from which the general inference of guilt may be deduced. Note the recapitulation of such circumstances in the opinion of the court.

2. SAME. — See the evidence collated in the opinion, and held sufficient proof of the value of stolen paper money.

3. ALLEGATION AND PROOF OF OWNERSHIP. — Indictment laid the ownership of stolen paper money in one H. The proof showed that he was conducting a store for one M., and that he was in possession, and entitled to possession, of the store and money when the latter was stolen. *Held,* that the proof sustains the allegation.

APPEAL from the District Court of Rusk. Tried below before the Hon. A. J. BOOTY.

The case is fully disclosed in the opinion of the court.

*N. G. Bagley* and *Martin Casey,* for the appellant.

*George McCormick*, Assistant Attorney General, for the State.

ECTOR, P. J.    The indictment in this case charges the defendant with the theft of $50 in lawful currency, of the following denominations and descriptions, to wit: "One twenty-dollar note, of the value of twenty dollars, the said twenty-dollar note being then and there greenbacks and lawful currency of the United States of America, series of 1869, No. A 1513612; also one other twenty-dollar note, the same being then and there greenback and lawful currency of the United States of America, and of the value of twenty dollars, series 1869, No. A 2977011; also one ten-dollar note, national currency, No. B 322107, of the National Bank of Eastern Pennsylvania, of the value of ten dollars; and altogether of the value of fifty dollars," etc.

The testimony is substantially as follows: That S. Hecht had charge, in Henderson, of a branch store belonging to E. Mayer, of Overton — Mayer remaining in Overton. Hecht was packing up his goods to carry them back to Overton. He was in the store-house, and there were present Mr. Hubbard, the wagoner employed to haul the goods to the depot, and the defendant, Ellick Bagley, a colored man who was employed by Hubbard to assist him. Hecht's trunk, in which he kept his money, was on the inside of the store-room, to the left of the door leading into the back room. His trunk had been locked until a few minutes before he missed the money. About seven minutes before he missed the money, he went, in the presence of the defendant, and placed some money in the pocket-book in the trunk. Defendant saw him do it, and Hecht went back to his work. In a few minutes Hecht saw the defendant come in from the back door, looking excited; and, seeing his trunk open, he at once examined, and missed $60 in paper money. At this time Hubbard and Will Hall were

standing in the front part of the store, and had not been nearer the trunk than they were when Hecht missed his money. Hecht had been all the time between them and the trunk, and no one had been near the trunk but defendant, that he saw, and he was in à condition to have seen them had they gone there.

He at once arrested defendant, and also sent for the deputy sheriff, Nichols, who came and commenced search for the money. Nichols, after going out of the back door, returned $61 to Hecht — $1 more than he at first thought he had lost, but afterwards he remembered that he had put some change in his pocket-book which he had forgotten. He stated that he did not remember the size of the bills he had in his pocket-book, and could not swear that the bills given him by Nichols were the money he had lost, but that the amount handed him by Nichols was the amount he had lost, and that the money lost was paper money. He further testified that he gave this money to W. W. Spivey to draw the indictment by.

J. J. Nichols, the deputy sheriff, testified that when he arrived at the store he took charge of the defendant, and then went out at the back door, in the direction from which Hecht had seen the defendant coming; and in the chimney-corner, under a brick, he found $61 in currency, which he gave to Hecht.

W. W. Spivey, the county attorney, testified that the bills described in the indictment were the bills given to him by Hecht, and that he did not describe all of them because it was unnecessary.

The two vital questions in this case are, first, Was the money which is charged in the indictment to have been stolen sufficiently identified? secondly, Was the value of the same sufficiently proved?

Money, whether in coin or bank-notes, belongs to a class of things which cannot be identified by mere general appear-

ance, without the aid of circumstances. The mere fact that a coin lost, and charged to have been stolen, is of the same denomination and issue as a coin found in another's possession falls far short of proof of identification. Burrill on Cir. Ev. 171. The usual means of identifying metallic money is by particular marks upon the individual coins, such as scratches, bruises, discolorations by heat or chemical substances, perforations, and the like. Occasionally the process of mere wear communicates to a coin an appearance by which it is distinguishable from others of the same denomination and issue.

The same observations are, for the most part, applicable to paper money. Many of the notes of the same bank and denomination bear a very close resemblance to each other, the differences consisting in the bank numbers and letters, and the dates, which are rarely noticed by the holders, or, if noticed, are not remembered. Hence the necessity of resorting frequently to marks upon the particular note or notes in question, intentionally made by the holders or accidentally produced in the course of circulation, such as stains, rents, and mutilations of different kinds. The actual identification of paper money, however, is often dispensed with to a considerable extent when there are other circumstances from which the general inference of guilt may be drawn.

By recurring to the testimony it will be remembered that Nichols found, under a brick in the chimney-corner back of the store occupied by Hecht, $61 in currency, $50 of which are accurately described in the indictment; and that Nichols made the search at the instance of Hecht, who testifies that, a very short time previous to its finding by Nichols, he had missed the same amount of currency. The evidence further shows that the defendant had a better opportunity of stealing the money than any one else; and, in fact, if the witness Hecht is to be believed, the defendant alone had had

an opportunity of stealing it. The money was found not far from the back door, from which direction the defendant was seen coming only a few minutes after it was stolen. We believe that the jury were authorized from the evidence to conclude that the money found by Nichols was the $61 in currency which Hecht had lost, and that it was stolen from him by the defendant.

We also think that the value of the money was sufficiently proved. All of the witnesses who speak of the sum stolen call it money, and place the amount at over $20.

Mr. Wharton says : "Bank-notes are considered and treated as money, and the true rule of their value, as respects the graduating of the offense of stealing, is the sum which upon their face they promise to pay." 2 Whart. Cr. Law, sec. 1765. Hecht, the party from whom it is charged to have been stolen, says that it was paper money, and that he had paid it out before the trial. This point is the one upon which the defendant's counsel mainly rely, judging from their briefs and oral arguments, for a reversal of the case. To save the time of this court, we would suggest, when it can be done, that this point, in future prosecutions of a similar kind, be placed beyond question.

Proof that the real owner of the money stolen was a different person than that named in the indictment can make no difference ; the fact that Siamon Hecht was in possession of the money, and was entitled to such possession, when it was so taken is sufficient. *Langford* v. *The State*, 8 Texas, 116 ; *Moseley* v. *The State*, 42 Texas, 78 ; *Cox* v. *The State*, 43 Texas, 101 ; *Henry* v. *The State*, 45 Texas, 84 ; *Thomas* v. *The State*, 1 Texas Ct. App. 295 ; Pasc. Dig., art. 2386.

We see no reason why the judgment should not be affirmed, and it is therefore done.

*Affirmed.*